UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMANDA RAE HACKMAN,

                         Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

<u>DECISION & ORDER</u>

17-CV-6541P

## **PRELIMINARY STATEMENT**

Plaintiff Amanda Rae Hackman ("Hackman") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income Benefits and Disability Insurance Benefits ("SSI/DIB"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (Docket # 15).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 10, 13). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and Hackman's motion for judgment on the pleadings is denied.

## DISCUSSION

### I. Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity to perform [her] past work; and

(5) if not, whether the claimant retains the residual functional capacity to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t

3

step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

II.     **Parties' Contentions**

Hackman contends that the ALJ's determination that she is not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 10-1; 14). First, she challenges the ALJ's Residual Functional Capacity ("RFC") assessment on the grounds that the ALJ failed to account for work-related limitations caused by Hackman's vomiting, an impairment which he found to be severe at step two. (Docket ## 10-1 at 9-11; 14 at 1). Specifically, Hackman maintains that the ALJ should have determined the frequency of her vomiting episodes and accounted for that frequency in the RFC by requiring a position that would permit unscheduled breaks. (*Id.*). Next, Hackman argues that the ALJ's RFC is not supported by substantial evidence because he improperly rejected the limitations assessed by her treating physician, Colin McHugh ("McHugh"), MD, without pointing to a conflicting medical opinion in the record. (Docket ## 10-1 at 11-14; 14 at 1-3).

The Commissioner maintains that the ALJ properly considered whether Hackman suffered from work-related limitations caused by her vomiting, but concluded that Hackman's allegations regarding the frequency and debilitating effect of her vomiting were not credible. (Docket # 13-1 at 21-23). According to the Commissioner, the ALJ properly concluded that Hackman was able to engage in work-activities so long as she was permitted regular work breaks of fifteen to thirty minutes every two hours. (Tr. 17-18). The Commissioner also argues that the

4

ALJ properly weighed McHugh's opinion in assessing Hackman's RFC and that the ALJ's determination is supported by substantial evidence. (Docket # 13 at 16-21).

III. **Analysis**

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

A. **Accounting for Vomiting-Induced Limitations**

As noted by Hackman, the primary basis for her allegations of disability is that she suffers from frequent uncontrolled vomiting. (Docket # 10-1 at 10-11). Hackman argues that the ALJ failed to make any specific findings regarding the frequency and duration of her vomiting episodes during a workday – a failure that requires remand. (*Id.*). Further, Hackman maintains that the ALJ's failure to account for her vomiting-related limitations is inconsistent with the ALJ's finding at step two that the impairment was severe, as well as his determination to afford significant weight to the opinion of consulting physician, Harbinder Toor ("Toor"), MD,

5

which indicated that Hackman's gastrointestinal issues "could" interfere with her daily routine. (*Id.*).

I disagree that the ALJ's RFC assessment failed to consider or account for Hackman's vomiting impairment. As noted by Hackman, at step two, the ALJ specifically determined that "chronic vomiting of unknown etiology" was a severe impairment. (Tr. 15). In making his RFC determination, the ALJ noted that he considered all of Hackman's symptoms, the objective medical evidence, and other evidence, including the medical opinion evidence, in accordance with the regulations. (Tr. 18). A review of the ALJ's decision confirms that he carefully considered Hackman's testimony and statements concerning this impairment, as well as the medical evidence relating to her allegations of debilitating vomiting. (Tr. 14-28). The ALJ ultimately concluded that Hackman did suffer from impairments that could cause her alleged symptoms, but that the medical evidence and other evidence in the record contradicted her allegations that her symptoms were sufficiently frequent to be debilitating. (Tr. 20).

Specifically, the ALJ concluded that Hackman's allegations regarding the frequency and severity of her vomiting condition were not supported by the record, particularly the treatments records, which demonstrated sporadic treatment history, instances of suspected malingering, a significant delay in consulting with a gastrointestinal specialist despite repeated recommendations to do so, an apparent failure to consult with a neurologist as recommended, and essentially normal imaging, laboratory results, and biopsies. (Tr. 23-25). The ALJ further found Hackman's allegations not credible based upon her inconsistent statements regarding her symptoms and the timing of her complaints, which corresponded with her applications for SSI/DIB[1] and other benefits. (Tr. 27-28). On this record, the ALJ assessed that although

---

[1] The record demonstrates that Hackman applied for SSI/DIB on March 4, 2014, and again on January 1, 2015. (Tr. 84, 104). Her treatment records reflect increased complaints and treatment visits in early 2014 and in

6

Hackman did suffer from a chronic vomiting condition, the frequency of her episodes would not interfere with her ability to participate in work-related activity with customarily-permitted breaks and absences. I conclude that the ALJ's determination is supported by substantial evidence. *See Gladney v. Astrue*, 2014 WL 3557997, *9-10 (W.D.N.Y. 2014) (ALJ did not err by failing to account for physical limitations associated with plaintiff's impairment where the ALJ found the impairment severe at step two but determined that the medical record, including sporadic treatment for the impairment, did not support plaintiff's allegations that the impairment caused disabling limitations).

That the ALJ afforded "significant weight" to Toor's opinion does not conflict with his RFC assessment. Although Toor opined that Hackman's symptoms due to her "cyclic vomiting syndrome," including diarrhea, vomiting and abdominal pain, "can" interfere with her routine, nothing in his opinion suggests that he assessed that such interference would occur frequently enough to preclude her ability to work. (Tr. 327-30). In any event, Toor's opinion was based upon Hackman's self-report concerning the frequency of her symptoms – a self-report that was rejected by the ALJ – and relied upon her purported diagnosis of cyclic vomiting syndrome – a diagnosis that was subsequently ruled out by Sarah Enslin ("Enslin"), a physician's assistant in the Gastroenterology Department at Strong, after testing and review of Hackman's subjective complaints. (Tr. 327-30, 396-99).

### B. **Weighing of Dr. McHugh's Opinion**

Hackman also challenges the ALJ's physical RFC assessment on grounds that the ALJ improperly rejected McHugh's opinion despite the absence of any directly contradictory medical opinion in the record. (Docket ## 10-1 at 11-14; 14 at 2-3). McHugh opined, in

---

early 2015; relatively few treatment records relate to the latter half of 2014 or the period after March 2015. (Tr. 297-308, 334-43, 386-401).

relevant part, that Hackman would require approximately eight to ten unscheduled breaks of up to thirty minutes in duration during a typical workday. (Tr. 438-39). He also opined that Hackman would be absent from work more than two days a month and assessed that Hackman was very limited in her ability to twist and bend.[2] (Tr. 439-40).

Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2)[3]; *see also Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) ("the ALJ [must] give controlling weight to the opinion of the treating physician so long as it is consistent with the other substantial evidence"). Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician, because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history." *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). The ALJ must explicitly consider:

    (1)    the frequency of examination and length, nature, and extent of the treatment relationship,

    (2)    the evidence in support of the physician's opinion,

---

[2] Hackman maintains that McHugh's opinion does not conflict in any respect with any other medical opinion of record. (Docket # 10-1 at 13). The twisting and bending limitations assessed by McHugh, however, appear significantly more severe than the "mild to moderate" twisting or bending limitations assessed by Toor and Seema Khaneja ("Khaneja"), MD, another consulting physician. (*Compare* Tr. 329-30, 373-77 *with* Tr. 439).

[3] This regulation applies to claims filed before March 27, 2017. For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

8

(3) the consistency of the opinion with the record as a whole,

(4) whether the opinion is from a specialist, and

(5) whatever other factors tend to support or contradict the opinion.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x at 199. The regulations also direct that the ALJ should "give good reasons in [his] notice of determination or decision for the weight [he] give[s] [claimant's] treating source's opinion." *Halloran v. Barnhart*, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(c)(2)). "Even if the above-listed factors have not established that the treating physician's opinion should be given controlling weight, it is still entitled to deference, and should not be disregarded." *Salisbury v. Astrue*, 2008 WL 5110992 at *4. The same factors should be used to determine the weight to give to a consultative physician's opinion. *Tomasello v. Astrue*, 2011 WL 2516505, *3 (W.D.N.Y. 2011). "However, if the treating physician's relationship to the claimant is more favorable in terms of the length, nature and extent of the relationship, then the treating physician's opinion will be given more weight than that of the consultative examining physician." *Id.*

As an initial matter, the question whether McHugh, who apparently only met with Hackman on two occasions, should properly be considered a treating physician is not free from doubt. *See Wearen v. Colvin*, 2015 WL 1038236, *14 (W.D.N.Y. 2015) ("I disagree with [claimant's] characterization of [the doctor] as a treating doctor because the record reflects that [the doctor] only treated [claimant] on one occasion before rendering her opinion") (citing *Hamilton v. Astrue*, 2013 WL 5474210, *11 (W.D.N.Y. 2013) ("it is not clear that [the doctor] may be considered a treating physician because [claimant] testified that the first time she was examined by [the doctor] was when he completed her disability paperwork") (collecting cases)).

Hackman nonetheless contends that the ALJ's decision to reject the limitations identified by McHugh improperly elevated his own lay opinion over that of a medical source. I disagree.

As noted above, the ALJ's decision reflects that he carefully considered Hackman's longitudinal medical record, her statements concerning the limiting effects of her impairments, and her daily activities. The ALJ set forth several reasons for discounting McHugh's opinion, including that it appeared to be based solely on Hackman's subjective complaints that lacked support in the medical record, relied upon a diagnosis of cyclic vomiting disorder that was rejected by Enslin after objective testing and review of Hackman's symptoms (Tr. 396-400), and assessed sitting and standing limitations that were unsupported in the medical record and in Hackman's own testimony that whether she sits or stands has no effect on her vomiting episodes. (Tr. 25-26).

In formulating Hackman's RFC, the ALJ relied upon the medical records, Hackman's reports of her activities of daily living, as well as the consulting opinions of Toor and Khaneja, both of whom assessed only mild to moderate physical limitations. (Tr. 26, 330, 337). Under these circumstances, the ALJ properly evaluated McHugh's opinion and did not err by assigning it "limited weight" for the reasons he explained. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (summary order) ("[t]he ALJ did not impermissibly substitute [her] own expertise or view of the medical proof for the treating physician's opinion[;] . . . [r]ather, the ALJ rejected [the treating physician's] opinion because she found it was contrary to his own treatment notes") (internal quotations and citation omitted); *Alvarez v. Colvin*, 2016 WL 5791205, *9 (W.D.N.Y. 2016) ("[t]hough plaintiff criticizes the ALJ for discounting [the consultative physician's] opinion, that opinion is but one piece of a voluminous medical history

and record[;] [m]oreover, in her decision, [the ALJ] cited several medical opinions and other record evidence that supported her RFC determination").

In conclusion, I find that the ALJ's physical RFC assessment was supported by substantial evidence. Although the record plainly reflects that Hackman suffered from an impairment that caused intermittent gastrointestinal flares characterized by vomiting and abdominal pain, Hackman sought treatment only sporadically, with large gaps in her treatment history. The physicians who treated Hackman identified minimal objective findings and generally recommended that she seek treatment from a gastroenterologist. Although Hackman was evaluated by Enslin in July 2014 and March 2015, the record demonstrates that she failed to return consistently for appointments with Enslin as instructed. The ALJ determined that Hackman's allegations regarding the frequency with which her vomiting occurred were not credible and not supported by the record. The ALJ's RFC accounted for Hackman's physical impairments by limiting her to light work with postural and environmental limitations and regular breaks every two hours. The ALJ's RFC assessment was reasonable and supported by substantial evidence. *Pellam v. Astrue*, 508 F. App'x 87, 91 (2d Cir. 2013) ("[u]pon our independent review of the existing record, including [the consultative examiner's opinion] and the treatment notes from [plaintiff's] doctors, we conclude that the ALJ's residual functional capacity determination was supported by substantial evidence").

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of SSI/DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED**. Hackman's motion for

11

judgment on the pleadings **(Docket # 10)** is **DENIED**, and Hackman's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                                  *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                       United States Magistrate Judge

Dated:  Rochester, New York
         September 12, 2018